# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-8188-GW-JPRx | Date | December 21, 2020 |
|---|---|---|---|
| Title | *Steven Mitchell v. LeBron James, et al.* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Kevin P. McCulloch | Howard J. Shire |
| Nathaniel Kleinman | Jeffrey M. Goldman |
| | Oscar A. Figueroa |
| | Lawrence Shire |

**PROCEEDINGS:    TELEPHONIC HEARING ON PLAINTIFF'S MOTION TO DISMISS AND/OR STRIKE DEFENDANT'S COUNTERCLAIMS [65]**

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. For reasons stated on the record, Plaintiff's Motion is TAKEN UNDER SUBMISSION. Court to issue its ruling.

|  | : | 20 |
|---|---|---|
| Initials of Preparer | JG | |

*__Steven Mitchell v. LeBron James__*; Case No. 2: 20-cv-08188-GW-(JPRx)
Tentative Rulings on Motion to Dismiss or Strike Defendant's Counterclaims


## I.  __Background__

Plaintiff Steven Mitchell sued Defendant LeBron James for copyright infringement under sections 501 and 1202 of the Copyright Act.  *See* First Amended Complaint ("FAC"), Docket No. 56, ¶¶ 1-2.  Defendant filed counterclaims to Plaintiff's First Amended Complaint.  *See* Counterclaims, Docket No. 64, at 12.  Before the Court is Plaintiff's motion to dismiss or strike Defendant's counterclaims.  *See generally* Motion to Dismiss Counterclaims ("Motion"), Docket Nos. 65, 66.

### A.  Factual Background

Plaintiff is a professional freelance photographer and photojournalist.  *See* FAC ¶ 6.  He licenses his sports photographs primarily through Imagn Content Services, LLC, a division of the USA Today media network ("USA Today Sports").  *See id.* ¶ 8.  Plaintiff alleges that he took a photo of Defendant during a basketball game between the Los Angeles Lakers and the Miami Heat on December 13, 2019.  *See id.* ¶ 12, Exh. 1.  Plaintiff registered the photo with the United States Copyright Office under Copyright Registration Number VA 2-190-180, effective December 16, 2019.  *See id.* ¶ 15.  The official Instagram account for USA Today Sports published the photo on December 14, 2019, and gave Plaintiff explicit photo credit in the post. *See id.* ¶¶ 23-25, Exh. 4.  On December 14, 2019, Defendant purportedly copied the photo from the official USA Today Sports Instagram account, and published the photo to Defendant's own Instagram and Facebook accounts.  *See id.* ¶¶ 18-23, Exh. 2, 3.  Plaintiff alleges that Defendant personally controls his various social media accounts, and that no other social media accounts published the photo before "Defendant's unauthorized copying and republication" of the photo. *See id.* ¶¶ 26-27.

Plaintiff further alleges that Defendant deliberately chose Plaintiff's photo to be one of three featured photos on Defendant's Facebook landing page, which was visible to Defendant's millions of followers.  *See id.* ¶ 33.  Defendant intentionally chose the photo "to appear directly next to a commercial and promotional photograph of a new iteration of his Nike 'LeBron 17' shoe line," which was released on Christmas Day, "shortly after Defendant's unauthorized copying and republication" of the photo.  *See id.*  Plaintiff's photo prominently depicts

1

Defendant wearing the Nike LeBron 17 shoe while dunking the basketball, and Defendant purportedly selected and featured the photo next to "an explicit Nike product photograph" for this reason. *See id.* ¶¶ 35, 42. Defendant allegedly has an endorsement contract with Nike, which "includes express obligations and/or financial incentives to endorse and promote Nike footwear through social media content." *See id.* ¶¶ 36-40. Defendant thus has a financial incentive to increase his social media followers and promote Nike products on his social media accounts. *See id.* ¶¶ 53-54. Plaintiff claims that Defendant "included various hashtags with his unauthorized publication of the Photograph . . . for the express purpose of increasing the number of views and likes that his post would garner." *See id.* ¶ 51. As a result, "Defendant's unauthorized publication of the Photograph was distributed to his nearly 100 million followers and garnered over two million 'likes' on social media." *See id.* ¶ 52.

Defendant allegedly knew or was willfully blind to the fact that Plaintiff owned the photo, and the photo was protected by copyright. *See id.* ¶ 55. Plaintiff claims that Defendant – who had significant experience with social media, copyright, and intellectual property matters – knew he was not permitted to copy and republish photographs from other social media accounts without permission or authorization, and that such actions were unlawful. *See id.* ¶¶ 57-62. Defendant nevertheless "willfully ignored and ultimately removed the credit and ownership information" from the photo and reposted it. *See id.* ¶¶ 63-64. Defendant also failed to remove the photo from his social media accounts until at least five months after Plaintiff filed this lawsuit. *See id.* ¶ 65. Defendant purportedly has copied and published other photos to his social media account without permission, including at least one other photo created and owned by Plaintiff. *See id.* ¶ 66.

### B. Procedural Background

Plaintiff filed his original complaint in the Southern District of New York on March 17, 2020. *See* Docket No. 1. Defendant filed an answer to the complaint and counterclaims against Plaintiff on August 10, 2020. *See* Docket No. 32. The case was transferred to the Central District of California on September 11, 2020. *See* Docket No. 38. On September 25, 2020, Plaintiff filed an amended complaint and moved to dismiss Defendant's counterclaims. *See* Docket Nos. 56-60. On October 16, 2020, Defendant filed an answer to the amended complaint, as well as amended counterclaims against Plaintiff. *See* Docket No. 64.

In light of the amended counterclaims, Plaintiff withdrew his initial motion to dismiss

and filed the instant motion to dismiss Defendant's counterclaims on October 20, 2020. *See* Motion. Defendant filed an opposition brief ("Opp'n") with evidentiary objections, *see* Docket Nos. 78, 78-1, and Plaintiff filed a reply brief ("Reply") and a response to Defendant's evidentiary objections. *See* Docket Nos. 80-83.

### C. Counterclaims

Defendant filed counterclaims with his answer to Plaintiff's amended complaint, alleging that Plaintiff violated his right of publicity under California Civil Code section 3344 and the common law right of publicity. *See* Counterclaims, ¶¶ 25-40.[1] Defendant alleges that as a famous celebrity whose name, image, and likeness are widely recognized, he has licensed his image and likeness for many commercial purposes. *See id.* ¶¶ 8-9. However, Defendant purportedly has never licensed or otherwise permitted the use of his image or likeness for any purpose to Plaintiff. *See id.* ¶ 11. Plaintiff therefore does not have authorization to use Defendant's image and likeness. *See id.* ¶ 12. Nevertheless, Plaintiff allegedly has displayed various photos containing Defendant's image and likeness on Plaintiff's publicly-available professional photography website. *See id.* ¶¶ 13-15. Plaintiff uses the header "Steve Mitchell Photography" in connection with those photos. *See id.* ¶ 16. Additionally, Plaintiff allegedly advertises and promotes his photography services on social media platforms such as Instagram and Pinterest, and has posted photos containing Defendant's image and likeness on those platforms. *See id.* ¶¶ 18-19. Plaintiff purportedly chose to use photos of Defendant on his website and social media – which he uses to advertise and promote his photography services – because Plaintiff knew Defendant was a famous celebrity and that consumers instantly would recognize Defendant's image and likeness. *See id.* ¶¶ 20-22. Plaintiff also allegedly has sold or licensed photos after uploading photos of Defendant to Plaintiff's website, and has licensed photos containing Defendant's image and likeness to online and print media for a fee. *See id.* ¶¶ 23-24.

Accordingly, Defendant alleges Plaintiff has violated his right of publicity under California Civil Code section 3344 and the common law right of publicity. *See id.* ¶¶ 25-40. Defendant alleges that Plaintiff has exploited Defendant's image and likeness for commercial gain, and to advertise and/or promote Plaintiff's photography services, without Defendant's

---

[1] Defendant filed his answer and counterclaims in the same document, which contains two sets of paragraph numbers as a result. *See* Docket No. 64. When referencing Defendant's counterclaims, the Court will cite to the paragraphs beginning on page 12 of Docket No. 64.

consent. *See id.* ¶¶ 29-30, 32, 38-39.

Defendant's countercomplaint does not specify how many or which photos are at issue. Plaintiff identified four photos of Defendant out of over 100 images on Plaintiff's website. *See* Declaration of Steven Mitchell in Support of Motion to Dismiss ("Mitchell Decl."), Docket No. 67-1, ¶ 21, Exh. 2. Plaintiff took all four photos before 2014, at official National Basketball Association games and/or media events pursuant to an authorized credential. *See id.* ¶ 23. In July 2020, upon being notified of Defendant's objections to the images, Plaintiff removed the four photos of Defendant from the website. *See id.* ¶ 29.

## II. <u>Legal Standard</u>

Plaintiff brings his motion to dismiss Defendant's counterclaims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Motion at 1. Only Rule 12(b)(6) applies to this ruling.

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008) ("Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."). The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where a plaintiff facing a 12(b)(6) motion has pleaded "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," the motion should be denied. *Id.*; *Sylvia Landfield Trust v. City of Los Angeles*, 729 F.3d 1189, 1191 (9th Cir. 2013). But if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not show[n] . . . the pleader is entitled to relief." *Iqbal*, 556

U.S. at 679 (citations omitted).

### III. <u>Discussion</u>

#### A. **Federal Preemption**

Plaintiff first argues that the federal Copyright Act preempts Defendant's counterclaims. *See* Motion at 10. "The Copyright Act expressly preempts all state law claims where the plaintiff's work 'come[s] within the subject matter of copyright' and the state law grants 'legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright.'" *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 752, 760 (9th Cir. 2015) (quoting 17 U.S.C. § 301(a)). "To determine whether a claim falls within the Copyright Act's express preemption provision, [courts] consider whether (1) the work at issue falls within the scope of copyright subject matter, and (2) the law at issue grants rights equivalent to any of the exclusive rights within the scope of copyright." *Id.* (citation omitted).

Plaintiff states that he "owns all copyrights in [the photos of Defendant] and thus is entitled under the Copyright Act to control their publication." *See* Motion at 3-4; Mitchell Decl. ¶ 9. Plaintiff contends that because Defendant's counterclaims "seek to hold [Plaintiff] liable simply for exercising rights to which he is fully and unquestionably entitled as the copyright owner of the photographs at issue, these claims are equivalent to a copyright owner's protected rights and thus preempted by the Copyright Act." *See* Motion at 10.

In response, Defendant argues that his counterclaims are not preempted because he "does not claim a violation of his right to publicity based merely on Plaintiff's publication of [the photos]," but rather "alleges that Plaintiff misappropriated his likeness and identity without permission in order to ***advertise and promote*** Plaintiff's photography services." *See* Opp'n at 11 (emphasis in original). Defendant appears to challenge the first preemption factor – whether the work at issue falls within the scope of copyright subject matter – by arguing that "Plaintiff's use of non-copyrightable elements of [Defendant's] image and likeness in advertising violates [Defendant's] right of publicity." *See id.* at 14. "[A] publicity-right claim is not preempted when it targets non-consensual *use* of one's name or likeness on merchandise or in advertising." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1011 (9th Cir. 2017) (emphasis in original). "But when a likeness has been captured in a copyrighted artistic visual work and the work itself is being distributed for personal use, a publicity-right claim interferes with the exclusive rights of the copyright holder, and is preempted by section 301 of the Copyright Act." *Id.* Defendant thus

distinguishes between Plaintiff's right to display or sell the copyrighted photographs at issue –
which Defendant does not challenge – and "Plaintiff's use of images appropriating [Defendant's]
likeness in connection with the advertising and promotion of Plaintiff's photography services."
*See* Opp'n at 14, 23; Declaration of Howard J. Shire in Support of Defendant's Opposition
("Shire Decl."), Docket No. 78-3, ¶ 4.

However, as Plaintiff argues, it appears Defendant has not alleged facts showing Plaintiff
used Defendant's likeness to advertise or promote any services. *See* Motion at 11.  Defendant
does not allege that Plaintiff used his image and likeness in any advertising materials, or in any
manner beyond posting Plaintiff's copyrighted photos on his own website and social media.  *See*
Counterclaims ¶¶ 19-22.  Instead, Defendant alleges that Plaintiff uses the website and social
media to advertise his photography services, and thus used Defendant's likeness and image to
advertise those services by posting photos of Defendant.  *See id.* ¶¶ 18-22.  Defendant lists three
factors to support this allegation in his opposition brief: (1) the website contains a link to
Plaintiff's Instagram account; (2) all photographs on the website clearly display the banner
"Steve Mitchell Photography"; and (3) Defendant's image and likeness were posted on the
website "during the time when Plaintiff also posted [Plaintiff's] contact information," and the
website currently contains a page inviting visitors to message Plaintiff about his photography
services.  *See* Opp'n at 12-13; Declaration of Oscar Figueroa in Support of Opposition
("Figueroa Decl."), Docket No. 78-2, ¶ 2, Exh. A.  The Court agrees with Plaintiff that these
factors appear to be "generic features of almost any website" and do not establish that Plaintiff
intended to use Defendant's image and likeness beyond merely publishing Plaintiff's own work.
*See* Reply at 4.  The *pro forma* contact page on Plaintiff's website does not reference Defendant
or contain images of Defendant.  *See* Figueroa Decl. Exh. A.  While the factors may show that
Plaintiff claimed credit for his photos and used his website to promote his own photography, they
do not connect Defendant's image and likeness to any sort of advertising.

Further, it appears there only were four photos of Defendant out of over 100 photos
displayed on Plaintiff's website.  *See* Mitchell Decl. ¶ 21; Exh. 2.  The four photos were not
displayed on the website's landing page, and visitors had "to click through multiple
subpages/galleries" to view them.  *See id.* ¶ 22; Motion at 18.  There was no particular emphasis
placed on the photos of Defendant over any other photos.  *See* Mitchell Decl. ¶ 22.  Plaintiff
states that he uses his website "solely for portfolio purposes to document, display, and archive

6

[his] creative work." *See id.* ¶ 12.  The website contains six galleries of images by subject matter: Sports Images, Entertainment, Real Estate Photography, Detail, Portraits, and News.  *See id.* ¶ 12, Exh. 1.  The "Sports Images" gallery contains photos of several athletes across various professional and collegiate sports.  *See id.* Exh. 1.  Defendant has not pleaded that Plaintiff's website or social media accounts included statements or efforts to draw attention to Defendant's likeness and image in particular, and in connection with any advertisements or promotions.  As such, the Court would find conclusory and insufficient Defendant's allegation that Plaintiff posted Defendant's photographs to advertise and promote his photography services.

For the same reasons, the Court is unpersuaded by Defendant's argument distinguishing his claims from those in *Maloney*, 853 F.3d 1004.  *See* Opp'n at 11.  Defendant argues that, unlike the plaintiffs in *Maloney* who did "not contend that their likenesses were ever used on merchandise or in advertising" and whose publicity-right claims therefore were preempted, Defendant "alleges that Plaintiff misappropriated his likeness and identity without permission in order to advertise and promote Plaintiff's photography services."  *See* 853 F.3d at 1011; Opp'n at 11.  However, Defendant does not plead any facts to support his claim.  Without factual support, Defendant's conclusory allegation cannot survive preemption.  *See Kashani-Matts v. Medtronic, Inc.*, No. SACV 13-01161-CJC (RNBx), 2014 WL 819392, at *3 (C.D. Cal. Feb. 14, 2014) (conclusory allegation "that the device deviated from FDA-approved labeling and design, without any factual support, is not sufficient to save Plaintiff's claims from preemption").  Defendant also cites *Schroeder v. Volvo Grp. N. Am., LLC*, No. LACV 20-05127-VAP (PVCx), 2020 WL 6562242, at *8 (C.D. Cal. Sept. 3, 2020) for the premise that the Copyright Act does not preempt a plaintiff's right of publicity claim where the claim is based on the defendant's unauthorized use of the subject photographs containing plaintiff's likeness in a marketing campaign.  *See* Opp'n at 11.  But Defendant here did not allege that Plaintiff used his likeness in a marketing campaign, or any sort of marketing or advertising material.  Defendant only alleges that Plaintiff published Plaintiff's own photography work on his website and social media, which is insufficient to connect Defendant's likeness to advertisements or promotions.

Defendant correctly notes that both the Ninth Circuit and the California Court of Appeal have held that human likeness is not a copyrightable subject matter.  *See Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1004 (9th Cir. 2001) ("A person's name or likeness is not a work of authorship within the meaning of 17 U.S.C. § 102 . . . notwithstanding the fact that

Appellants' names and likenesses are embodied in a copyrightable photograph."); *KNB Enters. v. Matthews*, 78 Cal. App. 4th 362, 365 (2000) ("[B]ecause a human likeness is not copyrightable, even if captured in a copyrighted photograph, the [claimants'] section 3344 claims against the unauthorized publisher of their photographs are not the equivalent of a copyright infringement claim and are not preempted by federal copyright law.").   However, the Ninth Circuit has clarified that in *Downing*, the photograph at issue was directly tied to advertising.   Abercrombie did not merely publish a photo, but "published the photo in connection with a broad surf-themed advertising campaign, identified the plaintiffs-surfers by name, and offered for sale the same t-shirts worn by the plaintiffs in the photo."  *See Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1141 (9th Cir. 2006).  Abercrombie thus "suggested that the surfers had endorsed Abercrombie's t-shirts" and the Ninth Circuit concluded that the basis for plaintiffs' claims was not the photograph itself, but the use of plaintiffs' likenesses and names.  *See id.*  It therefore was not within the subject matter of copyright and plaintiffs' publicity-right claim was not preempted. *See id.*  There is no analogous advertising campaign using Defendant's likeness or name to suggest an endorsement here.   Defendant merely alleges that Plaintiff posted photos of Defendant to his own website and social media.

 As to *KNB Enterprises*, the Court would agree with Plaintiffs that the right of publicity claim in that case involved the unauthorized publication of photos, which differs from Defendant's claims here, which involve Plaintiff's authorized publication of the images.  *See* 78 Cal. App. 4th at 365; Reply at 9-10.  The plaintiff in *KNB Enterprises* owned the photos' copyrights and sued the defendant for copying the photos and posting them to his commercial website.  *See* 78 Cal. App. 4th at 365-66.  The California Court of Appeal held that "a section 3344 claim is preempted . . . where a [claimant] with no copyright interest in the work seeks to prevent the exclusive copyright holder from displaying the copyrighted work," but that a section 3344 claim is *not* preempted where "the defendant has no legal right to publish the copyrighted work."  *See id.* at 374.  Here, Plaintiff appears to be the exclusive copyright holder of the photos. *See* Motion at 3-4; Mitchell Decl. ¶ 9.  Defendant, who has no copyright interest in the photos, does not challenge Plaintiff's right to display or sell the photos.  *See* Opp'n at 14, 23; Shire Decl. ¶ 4.  Accordingly, the Court would find Defendant's publicity-right counterclaims preempted by the Copyright Act.

Because the Court would dismiss Defendant's counterclaims on this ground, the Court

need not reach Plaintiff's other grounds for dismissal and/or to strike.[2]

### B. Evidentiary Objections

Defendant objects to evidence filed by Plaintiff.  *See generally* Evidentiary Objections, Docket No. 78-1.   Specifically, Defendant objects to Exhibit 1 of Plaintiff's counsel's declaration, and certain paragraphs in Plaintiff's Declaration.  *See id.* at 1.  Plaintiff has filed a response to Defendant's objections.  *See generally* Response to Evidentiary Objections, Docket No. 83.  However, because the Court does not consider the objected-to evidence in reaching its decision herein, it does not rule upon the objections.

## IV. <u>Conclusion</u>

Based on the foregoing discussion, the Court would **GRANT** the motion to dismiss Defendant's counterclaims.

---

[2] The Court would construe Plaintiff's motion as presenting separate, alternative bases for dismissing or striking Defendant's counterclaims.

The Court does note that Plaintiff has raised an anti-SLAPP motion to strike.  *See* Motion at 21-23.  The Ninth Circuit has held that California's anti-SLAPP statute applies to state causes of action raised in federal court. *See, e.g., United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 973 (9th Cir. 1999); *but see Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 272 (9th Cir. 2013) (Kozinski, J. concurring) (finding that *Newsham* was "wrong and should be reconsidered.").  However, a growing number of appellate courts have held that state anti-SLAPP statutes contain procedures which impermissibly conflict with Federal Rules of Civil procedure 12 and 56; and, therefore, should not be applied in federal court.  *See, e.g., Klocke v. Watson,* 936 F.3d 240, 244-47 (5th Cir. 2019); *Carbone v. CNN, Inc.*, 910 F.3d 1345, 1357 (11th Cir. 2018); *Abbas v. Foreign Policy Group, LLC*, 783 F.3d 1328, 1333-34 (D.C. Cir. 2015); *see cf., Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.,* 956 F.3d 1228, 1237 (10th Cir. 2020) (finding then-Judge Kavanaugh's reasoning in *Abbas* to be "persuasive").

While obviously this Court cannot hold that California's anti-SLAPP statute is per se inapplicable to the present action (although there are very good arguments as to both sides of the issue on the merits of the motion), it need not jump into that briar patch when it can dismiss the counterclaims for the reasons stated herein.